*ROANI3, J.
This is an action on the case, brought by the assignee of a bond, to recover of his immediate assignor, compensation on account of the non paj'-merit of the bond by the obligor. The first count states a special agreement of the assignor to be liable on failure of payment. The second, states the liability, as a legal inference from the assignment for valuable consideration, and the non-payment by the obligor. The third count is for monej', had and received. But the case as stated by the jury, allows no ground to presume a special agreement, and therefore, we must decide this as a general question. That question is, whether an action can be maintained against the assignor of a bond, without a particular undertaking on his. part to insure the payment? That due diligence was used by the appellees to recover the money from the obligor, is admitted, by the verdict, and therefore, this circumstance will be considered as forming a part of the case.
In the cases of bills of exchange, it is admitted on all hands, that an action will lie against the drawer or endorser, if payment be not made by the drawee; but it is contended, by the counsel for the appellant, that this arises out of the custom of merchants. As against the acceptor, the argument is correct. He undertakes to pay the debt of another, and consequently, can only be charged in a special action on the case, founded upon the cu*tom of merchants. But against the drawer or indor-ser, indebitatus assumpsit will lie, because the draft in itself imports a debt to be due. Promissory notes, stand in the same situation, the indorser being considered as a drawer. It is on account of the privity between the indorsee and the indorser, that this action may be maintained. The action is not founded on the bill or note, but upon the implied undertaking, and the bill or note, is evidence only of that undertaking. These principles owe their existence, not to the custom of merchants, but to the common law.
Let us pursue these principles, and they will give light to the further investigation of this question. The case of promissory notes will be an important guide, and therefore it will be proper to see, how they stood, previous to the statute which it is supposed created the liability of the indor-ser of them. Lambert v. Oakes, is most correctly reported in Ld. Ray 443, as the observations made by Kyd in his treaties on bills of exchange, page 109, incontestably prove. This case was decided antecedent to the statute of Ann, and was consequently governed by the principles of the common law. It was there ^determined by lord Holt, that the indorsee of a promissory note, might recover against the indorser, if payment of the note had been demanded and refused. It would seem as if this case decided the question. Bonds in England, are not assignable, and therefore stand in the same situation as notes of hand did at the time when this case was determined. I can see no reason, why the assignor of a bond should not be liable in the same manner, even in that country, though I do not at present recollect any such case.
In this country, the assignee of a bond acquires a legal right to bring suit upon it, and to receive the money, discharged from any controul of the assignor over the subject; it is therefore his duty to bring suit. The assignment does in itself import a debt due to the assignee, and there is *722 the same privity of contract between the two parties, as exists in the cases of bills and notes. They are all governed by the same common law principle, and consequently, an indebitatus assumpsit will lie in this country against the assignor of a bond, in the same manner, as it will in England against the indorser of a bill or note. The object of our law was not to defeat this common law remedy, but merely to give a right to the assignee to sue in his own name, which otherwise he could not have done.
The same common law principle will extend much farther than the case now before the court. I ,have no doubt, but that it will reach the case of a transfer of a bond without an assignment, and that the transferee having used due diligence to recover the money, may maintain an action against the person from whom he obtained it, for money had and received; the assignor can defend himself only by an express stipulation to the contrary. In the case of bills, transferred -by delivery only, it is laid down in 1 Ld. Ray, 442, that the person making the transfer ceases to be a party to the bill; that it is a sale, a'nd the seller not bound to refund, if the bill be not paid. But Kyd in his treatise on bills of exchange page 60, very properly observes, “that this is only true in the case of a demand by a subsequent party, when several have intervened between him and the person against whom the demand is made; it can never apply as between the immediate parties to the transfer; for though the person who has given the money for the bill or note cannot recover against the person who received it, as indorser, he may recover in an action for money had and received for his use, as the transferer must be understood to undertake for the *bill being duly paid.” This is certainly sound doctrine. I am for affirming the judgment.
CARRINGTON, J.
Independent of those principles of the common law, which create on the part of the assignor of a bond, an implied undertaking to pay, if the obligor does not, the general understanding of those who enter into negociations of this sort, would be sufficient to make the assignor liable. The assignee, purchases principally upon the credit of the person from whom he receives the bond. He is not always acquainted with the obligor, or with his circumstances.
The difficulties which were mentioned at the bar, are not insurmountable. Whether due diligence had been used by the assignee to recover against the obligor would necessarily be a matter in issue between the parties, and would upon all the circumstances of the case be decided by the jury.
As to the extent of the assignor’s liability, I think it can only reach the sum actually received, in case the obligor is able to prove it. If he cannot do this, it is to be presumed that he received an equal sum with that due upon , the bond. If incautiously, the consideration actually received be not stated in the assignment, and it can no otherwise be proved, a court of equity is open to the assignor, and he may there seek a discovery of that fact.
As to the lengths which it behoves the assignee to go in pursuit of the obligor before he can resort to the assignor, it is unnecessary to lay down any general rule; it may suffice to say, that in the present case, he went far enough.
IvYONS, J.
There is in this .case, but a single question propounded by the jury; which is, can the assignee of a bond maintain an action against the assignor, without a special undertaking by the latter to insure the payment? No facts, or circumstances are stated, from which it can be presumed, that the assignment was conditional, or that it was such, as in any manner to discharge the assignor from all recourse against him.
To get at the real point in this and similar questions, we should first settle, what is the essence of the contract which the parties enter into? what is it that is disposed of by the one, and- acquired by the other?
In the sale of lands, the vendee purchases soil, not parchment. If it be a bill of exchange, a note of hand, or bond, it is money in the hands of a third person, which is given in exchange, by the person to whom it belongs, for another sum of money, of for something else which he deems equally valuable. *The paper, is only the evidence of his right, and in itself has no intrinsic worth. In this case, we are to presume, that a full consideration was given, which could not have been for the paper and wax, but for the money, which the bond imports to belong to the assignor. If a full consideration had not been paid, that might have been a circumstance, from which the jury might have inferred a special agreement on the part of the assignee, to ’ take the bond without recourse.
The right of the assignee to resort back to him from whom he acquired the bond, is bottomed upon principles of common law. There is an implied agreement by the assignor, that the money which he sells, and for which he receives an equivalent, shall be received by the purchaser, as much so, as if any personal property whatever were the subject of the contract. There is no reason, why an implied warranty should not exist in the sale of bonds, as well as in the sale of other property.
If this right then existed antecedent to the act of 1748, which made bonds assignable, how is it affected by that law? New rights are acquired under it, and the in-conveniencies of the common law, which obliged the assignee to use the name of the assignor, are removed.
But this is obviously intended for the benefit of the assignee, and cannot be construed consistently with the spirit of the law, to deprive him of preexisting rights. The legislature could not mean to provide him with a new remedy, and at the same time to lessen the security which he before enjoyed, nor does such a consequence grow out of the law. It was strongly insisted upon at the bar, that such a conclusion was fairly to be made, because a remedy against the assignor was not given. The answer to this is, that it was not necessary ; and since it is not expressly taken *723 away, it still continues to exist as it did before the statute was made.
Upon the whole I am of opinion, that the assignor is liable, unless there be some special circumstances to shew that it was not so intended by the parties, at the time the assignment was made.
Judgment affirmed.